**United States District Court**
For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

ALEJANDRO CAMACHO,                      No. C 04-1541 CW

         Petitioner,                    ORDER DENYING
                                        PETITION FOR WRIT
     v.                                 OF HABEAS CORPUS

TOM CAREY, Warden,

         Respondent.
_____/

     Petitioner Alejandro Camacho is a prisoner of the State of
California who is incarcerated at California State Prison-Solano at
Vacaville, California.  He brings this petition pro se seeking a
writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Respondent was
ordered to show cause why the writ should not be granted; he filed
an answer, supported by a memorandum of law, and lodged the State
court record.  Petitioner filed a traverse.

     Having considered all of the papers filed by the parties and
the State court trial record, the Court DENIES the petition for
writ of habeas corpus.

BACKGROUND

According to Petitioner's probation report, the Drug Enforcement Administration learned that a storage locker in San Jose, California, was being used to facilitate narcotic trafficking.  On June 6, 1999, DEA agents began video surveillance of the storage locker.

Two days later, Petitioner arrived at the storage facility. He backed his 1988 Ford Explorer up to the storage locker, unlocked the door and looked around nervously as he entered the locker.  He picked up a large plastic-wrapped object and concealed it under his shirt.  He exited the storage locker, placed the object in the rear of his vehicle and drove away.

The next day, agents obtained a search warrant for the locker.

On June 11, 1999, Fernando Ambris and Juan Ambris, arrived at the storage locker.  They got out of their 1998 Chevrolet Cavalier and looked around nervously.  Juan opened the car's trunk and handed the locker key to his brother Fernando.  Fernando partially opened the storage locker door, returned to the car to get a triple lined plastic bag and crawled underneath the partially opened locker door.  Juan continued to look around nervously.

Agents approached and detained the brothers.  Fernando waived his Miranda rights and stated, "Yes, Yes, I am guilty."  He denied manufacturing methamphetamine, but admitted that he and his brother were using the storage locker to store methamphetamine and equipment; he stated the methamphetamine found in the locker was his.  Fernando further stated that he paid Petitioner $3,000 a year to rent and guard the storage locker.  Juan declined to make a

United States District Court

For the Northern District of California

statement without an attorney.

Pursuant to the search warrant, agents entered the locker and located a cardboard box.  In the box were eighteen packages of brown powder wrapped in plastic and an open package containing 231.7 grams of a white powder substance.  The agents analyzed the brown powder with a NIK test kit; it tested presumptively positive for methamphetamine.  Agents also found in the locker: heating mantles; flasks bearing reaction by-products; buckets containing a white granular substance; a plastic bag containing red phosphorus; a five-gallon gasoline container containing ephedrine; an electronic heat sealer; and a plastic container holding one gallon of amphetamine in liquid form.

That same day, DEA agents detained Petitioner and his wife as they drove away from their home in San Jose.  Petitioner had a key to the storage locker.  Agents searched his vehicle and found a cell phone and a pager.  The San Jose Police Department's Narcotics Covert Investigations Unit entered Petitioner's home pursuant to a warrant obtained by the agents.  The officers seized from Petitioner's home: two notebooks containing various names, telephone numbers and numeric computations; a bill for the storage locker; one-thousand dollars in United States currency; plastic wrap; a coffee grinder with white powder residue; and a five-gallon plastic gasoline can.  The San Jose Police Department also discovered that, three years before, Petitioner had filed a fraudulent driver's license application in the name of Alejandro Cendejas Loya.

After being read his <u>Miranda</u> rights, Petitioner stated that he

United States District Court

For the Northern District of California

had visited the storage locker a few days before because the Ambris brothers told him to get one pound of methamphetamine from the locker and bring it to them.  He stated that the brothers cooked and sold methamphetamine and that the brothers paid him to watch the locker, to pay the rent and to take things to, and to remove things from, the locker.

Petitioner was charged with manufacturing more than ten pounds of methamphetamine, possession of more than four kilograms of methamphetamine for sale and transportation of methamphetamine. The information alleged that Petitioner had previously been convicted of possession for sale of a controlled substance and that he served a prior prison term.  In a separate information, Petitioner was charged with false application for a driver's license; that information also alleged that Petitioner had served a prior prison term.

Petitioner moved to quash three search warrants and to suppress seized evidence.  On December 21, 1999, the trial court denied the suppression motion.

On January 5, 2000, the day his trial was to begin, Petitioner plead nolo contendere to all charges against him.  He admitted to the enhancements, prior convictions and prison terms.  Before Petitioner changed his plea, the trial court informed Petitioner and his co-defendants of their rights.  The court asked Petitioner if he understood that "the maximum possible penalty for these offenses is twenty-two years eight months in the State prison and a total fine of $40,000."  Petitioner responded, "Yes."  When asked by the court if anyone had promised him "anything other than what's

4

United States District Court
For the Northern District of California

been said here in open court to get you to plead guilty or no contest," Petitioner replied, "No."  Petitioner also replied, "No," when the court asked him if "anyone threatened you or anyone close to you in order to get you to plead guilty or no contest."  And when the court asked if he was pleading "no contest freely and voluntarily," Petitioner answered, "Yes."

A probation officer interviewed Petitioner on February 9, 2000.  During the interview, Petitioner "adamantly denied any involvement in the illicit production, transport, or sale of methamphetamine."  He recanted the previous statements he made and claimed that he was coerced into making those statement because the agents told him that they would arrest his wife and place their child in protective custody if he did not admit culpability.  He stated that he did not pursue a jury trial because he believed his criminal history would be used against him.  The probation officer recommended that Petitioner be committed to the California Department of Corrections for sixteen years.

On May 24, 2000, the court sentenced Petitioner to a total prison term of sixteen years.

Petitioner appealed his conviction, arguing that the court erroneously denied his suppression motion and that the prosecutor failed to provide information about the proficiency of the search dog, in violation of Brady v. Maryland, 373 U.S. 83 (1963).  The Court of Appeal affirmed the judgment, and the California Supreme Court denied Petitioner's petition for review.

On January 23, 2003, Petitioner filed a petition for writ of habeas corpus in the Santa Clara County Superior Court, alleging

5

**United States District Court**

For the Northern District of California

that he had received ineffective assistance of counsel because his counsel induced him to plead guilty, even though he did not want to do so.  Petitioner alleged that his counsel told him that his counsel paid $5,000 to the trial judge and that in return the judge promised to sentence Petitioner to only three years if Petitioner plead guilty to all counts.  Allegedly, Petitioner's counsel threatened Petitioner that if he went to trial, the jury would find him guilty and that he would be sentenced to twenty-two years in prison.  The superior court denied the petition, finding that Petitioner failed to establish a prima facie case for relief because his allegations were conclusory, unsupported and without any explanation.  For example, the court wondered where "the $5,000 in question came from."

After his petition was denied, Petitioner filed a similar petition for writ of habeas corpus in the California Court of Appeal for the Sixth Appellate District.  The Court of Appeal summarily denied that petition on May 22, 2003.

On July 21, 2003, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court, asserting that his plea was not voluntary, that he received ineffective assistance of counsel, that there was a breach of the plea bargain and that he was actually innocent of the charges and there was insufficient evidence to sustain his conviction: the same claims he brings before this Court.  The Supreme Court summarily denied his petition on March 30, 2004.

LEGAL STANDARD

A federal court may entertain a habeas petition from a State

6

prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a district court may not grant a petition challenging a State conviction or sentence on the basis of a claim that was reviewed on the merits in State court unless the State court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).  A decision is contrary to clearly established federal law if it fails to apply the correct controlling authority, or if it applies the controlling authority to a case involving facts materially indistinguishable from those in a controlling case, but nonetheless reaches a different result.  <u>Clark v. Murphy</u>, 331 F.3d 1062, 1067 (9th. Cir. 2003).

An unreasonable application of federal law occurs when the State court identifies the correct governing legal principle, but unreasonably applies that principle to the facts.  <u>Id.</u>  An unreasonable application of federal law is different from an incorrect application of federal law.  <u>Id.</u>  Relief is not proper where the State court decision is "merely erroneous."  <u>Early v. Packer</u>, 537 U.S. 3, 10 (2002).

The only definitive source of clearly established federal law

7

United States District Court

For the Northern District of California

1  under 28 U.S.C. § 2254(d) is the holdings of the Supreme Court as

2  of the time of the relevant State court decision.  <u>Williams v.</u>

3  <u>Taylor</u>, 529 U.S. 362, 412 (2000).  Circuit law may be persuasive

4  authority for purposes of determining whether a State court

5  decision is an unreasonable application of Supreme Court law.

6  <u>Clark</u>, 331 F.3d at 1070-71.

7      To determine whether the State court's decision is contrary

8  to, or involved an unreasonable application of, clearly established

9  law, a federal court looks to the decision of the highest State

10  court that addressed the merits of a petitioner's claim in a

11  reasoned decision.  <u>LaJoie v. Thompson</u>, 217 F.3d 663, 669 n.7 (9th

12  Cir. 2000).  If the State court only considered State law, the

13  federal court must ask whether State law, as explained by the State

14  court, is "contrary to" clearly established governing federal law.

15  <u>See Lockhart v. Terhune</u>, 250 F.3d 1223, 1230 (9th Cir. 2001).  In

16  the present case, only one of Petitioner's claims, ineffective

17  assistance of counsel, was addressed in State court in a reasoned

18  decision, and that decision considered only State law.  His other

19  claims were denied summarily by the California Supreme Court.

20  Where the State court gives no reasoned explanation of its decision

21  on a petitioner's federal claim and there is no reasoned lower

22  court decision on the claim, a review of the record is the only

23  means of deciding whether the State court's decision was

24  objectively reasonable.  <u>See Himes v. Thompson</u>, 336 F.3d 848, 853

25  (9th Cir. 2003).  When confronted with such a decision, a federal

26  court should conduct "an independent review of the record" to

27  determine whether the State court's decision was an unreasonable

28

1  application of clearly established federal law.  Id.

2      Under 28 U.S.C. § 2254, a federal court gives deference to a

3  State court's factual determinations.  Lambert v. Blodgett, 393

4  F.3d 943, 968 (9th Cir. 2004).  Title 28 U.S.C. § 2254(e)(1)

5  provides that "a determination of a factual issue made by a State

6  court shall be presumed to be correct.  The applicant shall have

7  the burden of rebutting the presumption of correctness by clear and

8  convincing evidence."

9      Even if the State court's ruling is contrary to or an

10  unreasonable application of Supreme Court precedent, that error

11  justifies habeas relief only if the error resulted in "actual

12  prejudice."  Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).

13                          DISCUSSION

14  I.  Guilty Plea

15      Due process requires that a guilty plea be both knowing and

16  voluntary because it constitutes the waiver of three constitutional

17  rights: the right to a jury trial, the right to confront one's

18  accusers, and the privilege against self-incrimination.  See Boykin

19  v. Alabama, 395 U.S. 238, 242-43 (1969).  The long-standing test

20  for determining the validity of a guilty plea is "'whether the plea

21  represents a voluntary and intelligent choice among the alternative

22  courses of action open to the defendant.'"  Parke v. Raley, 506

23  U.S. 20, 29 (1992) (quoting North Carolina v. Alford, 400 U.S. 25,

24  31 (1970)).  This requires a review of the circumstances

25  surrounding the plea.  See Brady v. United States, 397 U.S. 742,

26  749 (1970).  Of particular importance is that the defendant enter a

27  guilty plea with sufficient awareness of the relevant circumstances

28

                              9

and likely consequences, id. at 748, and that he understand the law

in relation to the facts. McCarthy v. United States, 394 U.S. 459,

466 (1969).

A plea is not voluntary unless it is "entered by one fully

aware of the direct consequences" of the plea. Brady, 397 U.S. at

755; see Carter v. McCarthy, 806 F.2d 1373, 1375 (9th Cir. 1986).

A habeas petitioner bears the burden of establishing that his

guilty plea was not knowing and voluntary. See Parke, 506 U.S.

at 31-34. If a defendant pleads guilty to a crime without having

been informed of the crime's elements, the standard set out in

Brady is not met and the plea is invalid. Bradshaw v. Stumpf, 125

S. Ct. 2398, 2405 (2005) (citing Henderson v. Morgan, 426 U.S. 637

(1976)). But the Supreme Court has never held that the judge must

himself or herself explain the elements of each charge to the

defendant on the record. Id. Rather, the constitutional

prerequisite of a valid plea may be satisfied where the record

accurately reflects that the nature of the charge and the elements

of the crime were explained to the defendant by the defendant's

own, competent counsel. Id.

As explained by the Supreme Court,

the representations of the defendant, his lawyer, and
the prosecutor at such a hearing, as well as any
findings made by the judge accepting the plea,
constitute a formidable barrier in any subsequent
collateral proceedings. Solemn declarations in open
court carry a strong presumption of validity. The
subsequent presentation of conclusory allegations
unsupported by specifics is subject to summary
dismissal, as are contentions that in the face of the
record are wholly incredible.

Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).

10

United States District Court

For the Northern District of California

United States District Court
For the Northern District of California

Petitioner lists "Invalid Plea on Due Process" as one of his grounds for relief, stating that the plea was invalid because it was made unintelligently and unknowingly.  He alleges that the nature of the plea, the elements of the offense and the consequences of the plea were not explained and a that factual basis was not established.  The record, however, shows otherwise. The court asked Petitioner if he had an opportunity to discuss his case fully with his attorney; Petitioner answered yes.  The court asked Petitioner if he had fully discussed the nature of elements of the charges; Petitioner answered yes.  When asked if he had fully discussed the possible defense to these charges, Petitioner again answered yes.  Petitioner answered yes when the court asked if he understood that the maximum possible penalty was twenty-two years and eight months in State prison and a total fine of $40,000.

Furthermore, a defendant who enters a plea of guilty, or no contest, on the advice of counsel may generally attack the voluntary and intelligent character of the plea only by showing that the advice he received from counsel was not within the range of competence demanded of attorneys in criminal cases.  See Hill v. Lockhart, 474 U.S. 52, 56 (1985); Tollett v. Henderson, 411 U.S. 258, 267 (1973).  In his traverse, Petitioner states that his plea was involuntary as a result of ineffective assistance of counsel because his attorney gave him erroneous information about his possible sentence.  But, as discussed in the following section, Petitioner is unable to show that he was prejudiced by his counsel's alleged substandard performance or that the California court's decision rejecting his ineffective assistance claim was

11

1   contrary to clearly established governing federal law.

2       Based on an independent review of the record and the

3   circumstances surrounding the plea, the Court finds that the State

4   court decision denying Petitioner's first claim for relief is not

5   objectively unreasonable.

6   II.  Ineffective Assistance

7       As stated above, a defendant who enters a plea of guilty, or

8   no contest, on the advice of counsel may generally attack the

9   voluntary and intelligent character of the plea only by showing

10  that the advice he received from counsel was not within the range

11  of competence demanded of attorneys in criminal cases.  See Hill,

12  474 U.S. at 56; Tollett, 411 U.S. at 267.  A defendant must satisfy

13  the two-part standard of Strickland v. Washington, 466 U.S. 668,

14  687 (1984), i.e., show that counsel's performance was deficient and

15  that the deficient performance prejudiced his defense by showing

16  that there is a reasonable probability that, but for counsel's

17  errors, he would not have plead guilty and would have insisted on

18  going to trial.  See Hill, 474 U.S. at 57-59.

19      A mere inaccurate prediction regarding the potential sentence

20  is insufficient to establish ineffective assistance; the petitioner

21  must establish a "'gross mischaracterization of the likely outcome'

22  of a plea bargain 'combined with . . . erroneous advice on the

23  probable effects of going to trial.'"  Sophanthavong v. Palmateer,

24  378 F.3d 859, 868 (9th Cir. 2004) (citing United States v. Keller,

25  902 F.2d 1391, 1394 (9th Cir. 1990)).

26      A defendant generally cannot establish prejudice under Hill if

27  he received significant benefits from his plea agreement.  Counsel

28                                  12

**United States District Court**
For the Northern District of California

may commit serious errors, but as long as counsel succeeds in substantially reducing the sentence defendant would have likely received had he gone to trial, there is no prejudice.  See United States v. Baramdyka, 95 F.3d 840, 845-47 (9th Cir. 1996) (counsel's failure to assert viable defense to charge that results in probation does not prejudice defendant when conviction on another, more serious charge is valid and other, valid charges are dismissed).

Petitioner argues that his plea was involuntary and unintelligent based on his counsel's ineffective assistance. Petitioner states in his traverse filed with this Court that his counsel promised that he would only be sentenced to three years if he plead guilty and paid an additional sum of money to the judge.[1] Instead, Petitioner was sentenced to sixteen years.  Petitioner asserts that his counsel's failure to assess his potential sentence accurately and to warn Petitioner that he risked a sixteen year sentence was unreasonable and fell below professional norms of conduct.  But, in his habeas petition before this Court, Plaintiff types, as supporting facts for his breach of contract claim, "Prior to taking the 16-year deal, counselor informed petitioner the state was offering a 3-year deal.  However, when petitioner arrived in court, his lawyer then told him that the 3-year deal is now a 16-year deal or go to trial."  Thus, Petitioner was warned as to a

---

[1] In the earlier declaration that was included with Petitioner's habeas petition to the Santa Clara County Superior Court, Petitioner declared that his attorney told Petitioner that the judge had been paid $5,000 and in return that judge agreed to give Petitioner a three-year deal.

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

possible sixteen year sentence.

In denying Petitioner's habeas petition based on ineffective assistance of counsel, the State court did not cite federal law. But the court did cite In re Alvernaz, 2 Cal.4th 924 (1992), a California Supreme Court case that sets forth the same requirements as Strickland for demonstrating an ineffective assistance claim in the context of plea bargaining. See Nunes v. Mueller, 350 F.3d 1045, 1053 (2003). Although it cited Alvernaz, the State court focused on whether Petitioner established a prima facie case. Finding that the petition was supported only by Petitioner's self-serving and conclusory allegations, the court denied the petition for failure to establish a prima facie case, without determining whether Petitioner was entitled to relief under Alvernaz and Strickland.

Although the State court did not consider Strickland, or its progeny, the Court finds that the State law the court did apply is not contrary to clearly established governing federal law. As noted above, the Supreme Court has found that the "subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." Blackledge, 431 U.S. at 73-74. Furthermore, the Court finds that the State court's denial of the habeas petition is not unreasonable. Even if the Court applies Strickland and assumes his counsel's performance was deficient, Petitioner is unable to prove prejudice. Although Petitioner states in his traverse that the maximum sentence was sixteen years, the actual maximum sentence, as the judge informed Petitioner, was

14

United States District Court

For the Northern District of California

twenty-two years and eight months.  After Petitioner plead guilty he received a sentence over six and a half years lower than the maximum.  <u>See</u> <u>Baramdyka</u>, 95 F.3d at 845-47.  And Plaintiff does not show that there is a reasonable probability that, but for counsel's errors, he would not have plead no contest and would have insisted on going to trial.  <u>See</u> <u>Hill</u>, 474 U.S. at 57-59.  Petitioner states in his traverse that he "knew from the outset that he had no serious defense to this crime" and that his "case was hopeless from the start, and his only course was to seek the best plea bargain possible."

III. Breach of Contract

Plea agreements are contractual in nature and subject to contract law standards of interpretation.  <u>Brown v. Poole</u>, 337 F.3d 1155, 1159 (9th Cir. 2003); <u>United States v. Kamer</u>, 781 F.2d 1380, 1387 (9th Cir. 1986).  In determining whether a plea agreement has been breached, courts look to what was reasonably understood by the parties to be the terms of the agreement.  <u>See</u> <u>Brown</u>, 337 F.3d at 1160; <u>United States v. Arnett</u>, 628 F.2d 1162, 1164 (9th Cir. 1979).  A party breaches a plea bargain if it fails to live up to the promises it made under the agreement.  <u>See</u> <u>Brown</u>, 337 F.3d at 1159-61.

Petitioner contends that his attorney informed him the State offered him a three-year sentence if he plead guilty, and that the State breached that contract when it reneged on the three-year sentence.  Petitioner moves for specific performance of his alleged contract, i.e., the three-year sentence.

But, here, there was no contract.  As Respondent notes, there

15

**United States District Court**
For the Northern District of California

1   is no "contract" until all the parties agree to be bound by the

2   agreement and the court accepts the plea.  <u>Brown</u>, 337 F.3d at 1159.

3   The court never accepted the alleged plea bargain that included a

4   three-year sentence.  Instead, the court informed Petitioner that

5   the maximum sentence was twenty-two years and eight months and that

6   Petitioner would be referred to the probation department for a

7   report and recommendation.  Furthermore, Petitioner cannot

8   reasonably have understood that the three-year sentence was part of

9   any agreement when he agreed to plead.  As noted above, he states

10  in his traverse that when he arrived in court his lawyer told him

11  "the 3-year deal is now a 16-year deal or go to trial."

12      Based on an independent review of the record and the

13  circumstances surrounding the plea, the Court finds that the State

14  court decision denying Petitioner's third claim for relief

15  demanding specific performance of a contract that did not exist, is

16  not objectively unreasonable.

17  IV.  Ineffective Assistance of Counsel Regarding Sufficient
         Evidence of Petitioner's Guilt
18

19      In his habeas petition, Petitioner claimed that there was

    insufficient evidence of his guilt and that he was actually
20
    innocent of the drug offenses.  In its order to show cause, the
21
    Court noted that because Petitioner did not go to trial and instead
22
    entered a plea, proof of guilt beyond a reasonable doubt was not at
23
    issue.  Instead, the Court read this claim "as part and parcel of
24
    Petitioner's cognizable due process and Sixth Amendment claims.
25
    That is, his plea was not voluntary and knowing because counsel did
26
    not advise him that the evidence against him was not sufficient to
27

28

United States District Court

For the Northern District of California

1  find him guilty, and if he had known this he would not have plead

2  guilty." Respondent contends that if the petition is so read, then

3  the claim is unexhausted.  But this is the same claim that

4  Petitioner brought before the California Supreme Court that was

5  summarily denied; thus Respondent's contention is unavailing.

6       Petitioner's claim that his trial counsel had a duty to inform

7  him that there was insufficient evidence to support his conviction,

8  however, is also unavailing.  As Respondent notes, the record

9  established that there was sufficient evidence against Petitioner

10  to support his conviction on the charged offenses.  For example, a

11  videotape shows Petitioner driving up to the storage locker,

12  opening it, going inside toward the back (where the officers found

13  the methamphetamine and manufacturing equipment), hiding a package

14  in his shirt that looked similar to the one-pound methamphetamine

15  bags later found, going back to his car and putting the package in

16  his car.  Furthermore, Petitioner does not show that he was

17  prejudiced by his counsel's alleged failure to inform him that

18  there was insufficient evidence against him and that had he known

19  this he would not have plead guilty.  As noted above, Petitioner

20  acknowledges that "he had no serious defense to this crime" and

21  that his "case was hopeless from the start."

22       Based on an independent review of the record, the Court finds

23  that the State court decision denying Petitioner's fourth claim for

24  relief is also not unreasonable.

25                              CONCLUSION

26       For the foregoing reasons, the petition for writ of habeas

27  corpus (Docket No. 1) is DENIED.  The Clerk shall enter judgment

28                                   17

1    and close the file.

2         IT IS SO ORDERED.

3

4    Dated: 1/26/06

5                                              _____

6                                              CLAUDIA WILKEN
                                               United States District Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                        18